First case we are going to hear today is Putney v. Likin and Ms. Deutsch will hear from you. Thank you, Your Honor, and may it please the Court. This case is about unwarranted physical punishment of a single prisoner, not generalized conditions resulting from budget constraints and overcrowding. The pre-discovery record shows that, despite countless pleas for help, prison officials forced Mr. Putney to sleep on a cold metal bunk for more than four months, inflicting needless suffering and risking chronic injury. In response to Mr. Putney's complaint, prison officials offer no good reason for this intentional long-term deprivation of a basic need. Their reason is reliance on a prevailing policy. Correct. And under their policy that we referenced first, and they cited to our reference of it, that would entitle them to deprive a mattress for a few days, not four months. Is there any case that says the deprivation of a mattress and making a man sleep on the floor or the metal bunk, he said he slept both places, with a blanket and a pillow, is an Eighth Amendment violation? There are cases that analyze mattress deprivations as potential Eighth Amendment violations. They never say what they say is the deprivation for a few days or a few weeks is not an Eighth Amendment violation, but they don't go on to say what is. Correct, but the difference is either you have the generalized conditions of confinement cases, which involve overcrowding, double-selling where people are sleeping on mattresses, on floors, maybe without a mattress. Typically not without a mattress, it's mattresses on floors. Or you have cases like the Second Circuit in Trammell where it's an intentional deprivation of a mattress for discipline in a deprivation cell according to a strict policy under WIT, which is authorized, written, observed, under which they do the same balancing that is done in the excessive force and deprivation as discipline cases. Is this a deprivation that is meant to coerce good behavior or is it an unwarranted infliction of pain? There is no case presenting these facts where you have an unwarranted long-term deprivation of a mattress for no legitimate purpose. What if they put him in an isolation cell and said you're going to have to sleep on the floor with a pillow and blankets? People sleep on the floor from the history of the beginning of this country, the refugees, the kids that go to camp. People sleep on floors. The question is that's so severe that we're going to call it an Eighth Amendment violation. The policy's been there. He could have avoided it by paying the $49 and then filed his grievance. He would have succeeded I guess in this case. But my question is, is it clear to us that making a man sleep on the floor with pillows and blankets is an Eighth Amendment violation? And of course that leads to the more important question, which is would the officers, the detainers, know that it was an Eighth Amendment violation at the time they enforced the policy? Well, there's a lot in what you just said. I know. Answer any part you want. Okay. Well, first, the policy isn't there. In page 44 of their brief, they have the COMAR regulation, and it says that the local facilities are required to have a written policy and procedure for handling these sorts of things. We don't have that in this record. What we do know from what we were able to find on the website is that the policy would allow a deprivation for a few days. In instances such as these where it's a contraband found in the mattress. We're not disputing. Does it say that for a few days? Well, Likens' declaration, we have, that's another reason there's an issue on this record. Likens says the adjustment hearing would happen within a few days, and the policy says you're supposed to get a reimbursement schedule. The compliance guidance to the policy, that's put in our brief, say you're supposed to get a reimbursement schedule written up after adjustment. We have no reimbursement schedule on this record. We have two exonerations from adjustment hearings on this record, which is likely why there's no reimbursement schedule. So that's one answer to your question. The other answer is the Trammell case I think is the closest to your facts, where the prisoner was put in an isolation cell with nothing but his underwear. This was a prisoner that had repeated disciplinary infractions, and they had a written policy that allowed use of such deprivation cells. Did they deprive him of blankets and sheets? They deprived him of everything but his underwear. They did not reach even the seriousness of the injury. They analyzed for the balancing. Was this done in good faith in accord with policy to discipline a prisoner? So the answer to your question I think is where you have a long-term deprivation of a basic need that is done with the sole intent, which is the only plausible reading of this record, to inflict suffering. That constitutes an Eighth Amendment violation. Would they have known? Under their own rules, every prisoner is entitled to a mattress. Four months without a mattress. The intent is to enforce the mattress deal, and if somebody disturbs the mattress, stores contraband in the mattress, then the mattress is destroyed and he can buy it back the next day. So his fine is essentially $49 or forfeiture, no mattress until it's resolved. Mr. Putney was told by one of the defendants that money was not the reason. He was not being deprived of a mattress, and if money truly was the reason, Why didn't he buy it back? Well, he had no money to buy it back. That's in, I'm sorry, I don't have this, I'll get it for you on rebuttal, but his prison account had less than $50 in it at the time and already had debt. They could have established that as well. Reading the record in the light most favorable to him as a non-moving party at summary judgment, the only plausible explanation is that they were doing this out of spite and vindictiveness. I might agree with you if we were contesting a jury result, but we're on a pre-discovery summary judgment record. I'm sorry. What do we do with the facts that his mattress had been sewed up with string and they found contraband inside? That is a contested, genuine issue of material fact on this record. He was twice exonerated and he disputes it and his appeal was found meritorious on this point. When prison officials act as they did here to inflict physical punishment with no legitimate purpose, the Eighth Amendment is always violated. And our first argument, which disposes of this case, is that the district court applied the wrong Eighth Amendment lens to this claim and it should be remanded to analyze under the proper standard. I'm happy to address the other points, the discovery. I think we also, the district court got it factually and legally wrong on injury, but we believe our first argument resolves this case. Thank you, Ms. Deutsch. Thank you. Ms. Molloy. If it may please this court, this is a case that's a matter of comfort, not a matter of an extreme deprivation of a basic life necessity that would qualify to be a violation of the Eighth Amendment. As the court has already pointed out this morning, that mankind has slept without a mattress for centuries. And even today, our soldiers who were deployed over in the Gulf War were without mattresses or cots for many, many months. It is essential that, in regards to a conditions of confinement case, that there must be serious injury, which did not exist in this case. Mr. Putney was a 33-year-old. An actual injury or a risk of injury? An actual injury or a risk of substantial injury that the officer knowingly would observe or know. In this case, the mere denial of a mattress does not rise to either the actual injury in this case or to someone knowing a correctional officer that there would be a substantial risk of serious injury. This is different in cases such as where someone were to fall from a great height and be injured or other types of serious injuries or conditions that are obvious, such as being in feces-laid cells for an extended period of time without the ability to clean or sanitation. In fact, in this case, what plaintiff has done is basically conceded that there's been no serious injury in this case by their argument that they, in fact, are asking the court to adopt a wholly new standard in this matter, that of excessive force. There is nothing to support the court moving towards that standard. The Supreme Court nor has this court ever analyzed conditions of confinement case under an excessive force analysis. And, in fact, the Supreme Court has rejected that analysis. The court in Hudson v. McMillan specifically stated that societal expectations of common contemporary standards of decency simply are different in kind in the use of physical excessive force of individuals in conditions of confinement. Would his case ever mark to a proper claim if you kept his mattress for two years? The time and length of the mattress, Your Honor, is not dispositive. And the court would become arbitrators. Then what's the answer to my question? No, because... So you could keep it forever? We could keep it forever as long as there's no serious injury. The court is not to become arbitrators of prison. As long as there's no serious injury. There's really no serious injury or risk of serious injury. And in conditions of confinement case, you must have that prong as well. Do you realize that sleep deprivation over a long period of time can cause severe psychological problems? Sleep deprivation could cause that, Your Honor. But in this case, the mere denial of a mattress when you had a bunk, bedding, pellet simply has not any evidence in this record, nor would it be known to the authorities that that would occur. There is evidence. In July, he complained of suffering of headaches and hip pain and back pain. And the physicians, in fact, prescribed him medication for that in July. In July, Your Honor, the objective record of that medical, rather than his subjective complaints, was they saw no change in his gait, in his strength, that they observed no pain or discomfort when he was sitting or standing. He was prescribed medications that were available in the commissary as far as ibuprofen and muscle rough. And simply, that does not rise to a serious injury or one that the officers would have known was an obvious risk of serious injury for the denial of a mattress. And to Judge Gregory's point about the psychological impact, he also said in July, quote, my mind is confused all day. That's in the medical records. That was a subjective complaint made by him. There was indication that he was alert and oriented. Well, most mental problems tend to start with subjective complaints, don't they? Yes, but in this case, we have medical records that show that the subjective complaints merely do not match the objective findings by the medical personnel when they observed his person. He was alert, oriented, time and space. He, in fact, did not show any inability to observing pain in terms of his gait. Additionally, the courts have found in Wilson v. Sider, the case that was reversed on the Sixth Circuit, where there was an infusion of the Whitley v. Albers standards in a conditions of confinement case, that that was inappropriate. Additionally, in Farmer v. Brennan, the court has found that it is inappropriate to have the excessive force standard infused in conditions of confinement case because they simply are different. They are different because an excessive force case always violates the standards of humanity and dictates. What is the policy? This was a comprehensive tossing of mattresses to look for contraband, wasn't it? Yes, it was. But don't you have to destroy most of the mattresses to find what is contraband? The process that was used there was that if they saw or observed information that led them to believe that that particular mattress had contraband in it, they would then take it and x-ray it. And if that further finding supported it, then they would open up the mattress and look therein, which is what occurred to Mr. Putney's mattress in this case. As a result of that, the prisoners are deemed to have been the persons who caused the destruction. In this case, there is a poor prison functioning here of running prisons to keep prisons free of contraband. A fishing line which was found was something that is often used to pass items or messages amongst inmates, causing potential security concerns and safety, not only to the correctional facilities themselves but to the inmates. If you did the x-ray on the mattress and you found a lump in the mattress, which was suspicious, and you tore it up to find out what it was and you found out what happened was it was just a conglomeration of fabric and it looked like it was contraband but it was really just a thick nodule of material, would you have to pay for that mattress? No, because there wouldn't have been finding of contraband in an inference or finding that the prisoner was responsible for the destruction of that mattress. Isn't that what happened here? Here he was exonerated. He had a disciplinary hearing where he was found in the first one not to have been the right person named. The record just reflects the not guilty as to the other. That does not change the fact that a prison official found contraband within the mattress. Well, why don't we excuse that? At this stage, we have two exonerations. Can you tell us as a matter of law, we have to say at this stage that you are right and he is wrong under this record at this stage? You know, I'm saying under this record, Your Honor, that in terms of conditions of confinement case, we simply are not there because we do not have a serious injury. And the court would be in the position of having to dictate between, is it five days, ten days, two months, three months for the denial of the mattress when there are other bedding materials available that are consistent with society norms that have occurred throughout history in terms of the deployment of our soldiers or hikers or bikers. I know that. We used to all walk around naked, too. I mean, I guess a long time ago in caves. I think there was something in the 70s as well. I don't think that that's quite the standard now, perhaps. But you keep switching over now to conditions of confinement. We're not talking about because of the restraints of budget and overcrowding. We're talking about now the excessive force aspect of it. You just told me if it turned out to be a little nodule and you were mistaken and you destroyed it in that process of search, you would give them their mattress back. Would you wait four months to do that? Would you wait four months if you found out after X-raying that it was just a lump of material? You say, oh, well, we destroyed it. We'll wait four months. Would you do that? The record does not reflect that information, Your Honor, but it would be my assertion that. Isn't that an inference of malice there? That's what he's saying. You did this deliberately. You knew I was exonerated. You made me sleep on that cold floor for four months just to inflict pain. That's his claim, and it seems to be from inferences as the law, it seems to me, was supposed to do at this stage. How do we say that you win as a matter of law when it's a dismissal state? I think that what the court is looking at is in terms of a mattress, that there is not an inference of malice that has caused harm. If it had been some other kind of condition, such as a hitching post or such as, you know, a physical use of force against me, there may be an inference as to why that occurred. In this case, the warden said in the ARP response to him, you can get your mattress back when you pay for it. There's a consistent record that that was the policy that was being followed. But why him? Everybody else in the same position got their mattress back, and he didn't. The record reflects that the individuals that got their mattress back either paid for it or had completed their hearing violations and, in fact, had reimbursement there. There's nothing in the record to reflect that anyone else in the matter was not subject to reimbursement. In addition, as to the inmate's record in terms of his financial record, there's financial record that's before the court shows he always had at least in reserve an account of $50. This is not a case where below it was an issue regarding an indigency. Additionally, Your Honors, they have waived this argument of excessive force. The court should not adopt a wholly new standard, and if you did, the officers would clearly be entitled to qualified immunity. But the mere allegation of saying that the intent of the officers was malicious does not transform a condition of confinement case into an excessive force case. That would make widespread cases being available to this court that are traditional conditions of confinement cases that the court would then be having to arbitrate, is my mattress too long, is my mattress too short? If it was all about restitution, then why did the commissioner ultimately direct the warden to issue appellant a mattress without requiring the restitution? The record reflects that the commissioner made that determination. There is not more information specifically as to that finding. The record also reflects that Officer Liken at some point in time prior to receiving that commissioner's notice, in fact, gave the mattress because he found at some point in time that no longer was it serving a purpose to try to enforce the policies that were being enforced in this case, which was very important policies, not having contraband coming into being maintained in the institution and having inmates held accountable for their actions. But he didn't have contraband. I think that the record reflects that his mattress, in fact, had contraband in it and that the officers, based on that information, continued to pursue that policy. In this case, Your Honor, when we look at the grounds in this case, we have also asked that the court confirm grounds in this matter on other matters, and one of those being qualified immunity. There are no cases faced before this court that say the denial of a mattress alone is sufficient to raise this case to a constitutional violation. He had a blanket. He had a blanket. He had a blanket. And therefore, there would be nothing to inform these officers that it would be a clear violation of the law. Additionally, in terms of... The commissioner actually said that his appeal about the mattress is found meritorious. The investigation revealed you were found not guilty of the infraction for destruction of property and possession of contraband. So he didn't have contraband, according to the commissioner, who finally gave him his mattress back. So you should probably stop saying he had contraband. That was the belief of the officers based on the search of his mattress, and that was the actions that they were going on in terms of their enforcement of that policy. In regards to the conditions of confinement, he included in that a May 2014 x-ray that showed there was no spinal alignment issues and only degenerative processes, which are part of aging. So even though there may be aspects of this case that the court finds troublesome in terms of the length of the time without a mattress, it simply, in this case, does not rise to a constitutional violation. If you were to find in this case and set a precedent that the denial of a mattress when there is other bedding materials available on this record would indicate that the courts would be in a position to have to arbitrate things such as the mattress was too hard, the mattress was too soft, the pillow was too firm, the blankets were too itchy. And what were the other bedding materials that were available? He had a pillow, he had a blanket, and he had a bunk. He also had his own clothing that was available to him. And in this case, the court would then be inundated with claims of conditions of confinement of bedding materials that simply do not justify a constitutional violation in this matter. Additionally, the court should find that they waived this as they did not raise it below. The conditions of confinement case was argued by the plaintiff both in his complaint and his motion for summary response to our motion for summary judgment as a conditions of confinement case. The district court judge reviewed this case and analyzed it as a conditions of confinement case. Finding that the plaintiff simply had not met the first prong in this case, which that there was a serious injury in this matter. And the court should not divert from that in this case and should not find that a waiver, especially when this is a novel and new approach that Mr. Putney's counsel is urging this court to take nor is it warranted. Thank you, Your Honors. Thank you, Your Honors. First and foremost, there's no waiver. Mr. Putney is a pro se litigant with no law library at his disposal when he filed his motion in opposition to summary judgment. Nonetheless, he cited Hopfe-Peltzer on JA 132, argued that intentional infliction of harm violates the Eighth Amendment and also said that the prison officials acted capriciously and despotically violently towards him in his opposition motion. Second, this is not a conditions of confinement case in the same way that Chinese water torture is not conditions of confinement. The difference between a prisoner in a cell with... Are you analogizing the deprivation of a mattress to Chinese water torture? I am, yes. Excessive force is application of force. This is just removing a mattress from his cell. There's not a case that's ever analyzed this type of situation under excessive force, is there? Crammel used the excessive force balancing. Hudson speaks of physical punishment, not just excessive force. Hort, cited with approval in Hopfe-Peltzer, also equates physical discipline with force. We believe, we argue, that hitting somebody in the face is tantamount to forcing them to sleep on a hard surface day after day, hour after hour, night after night, aggregating former injuries resulting in sleep depression and pain, deprivation and pain. And that brings me to my second point. We do not concede lack of injury at all. We believe the best way of approaching this case is to find that when there are such strong allegations of malice, you don't need to prove injury. We believe the Eighth Amendment, Supreme Court precedents support that argument. But if you were to go to the traditional conditions of confinement analysis, you would have to remand for two reasons. First of all, the district court's injury analysis is both factually and legally wrong. The Baclavin was prescribed, which is a muscle relaxant and pain reliever for back spasms and migraines, was prescribed after the one moment in time of no distress that the district court focused its injury analysis on. District Court, July 19th, no distress, Baclavin, July 26th. Mr. Putney filed a complaint, an ARP internal complaint on September 30th. Months after that, alleging that deprivation of his recreation for, by the way, complaining to an outside audit team about his lack of a mattress, was adding insult to injury and chronicled continuing injuries. His submissions with his amended complaint at J.A. 262, 263, don't only have the x-ray but have his description of not being able to walk, stand, or sit without chronic pain. We are fully convinced that if this case were to be remanded, there would be evidence of chronic injury, but we would suggest strongly that it be remanded with the correct standard to apply, which is where there is malice, injury is not dispositive, because if it were, it would allow those with the good portion to escape without injury, have no recourse to bring their pain. Finally, discovery is essential here. Just listening to my friend on the other side, there are so many facts that are in dispute, both as to the subjective element of the claim and any objective element that there might be, and the district court did not abuse discretion in denying discovery. We think the district court simply did not see the discovery request. Mr. Putney's response in opposition was filed in less than a month. The other side had seven months, four extensions to file their motion to summary judgment. The district court got Mr. Putney's handwritten submissions and ruled in less than a month after that to deny his complaint and dismiss this action on summary judgment without discovery. It's black-letter law that both parties should have ample opportunity, whereas here there are questions about intent and about injury, and also, importantly, the affirmative defenses. You cannot grant summary judgment on these alternative grounds without knowing who did what when, who knew what when. For example. Let me ask you, if the law is insufficiently clear to alert officers about the Eighth Amendment violation, the immunity would protect them from discovery and from further proceedings, wouldn't it? Qualified immunity protects you from discovery. Only if you know who did what. If you have qualified immunity, you get protected from discovery. Isn't that correct? But the question about whether you're entitled to qualified immunity depends on. . . I understand that. I just need to know the answer to whether you agree with that initial precept. Not in all cases, no. Because the point is here. . . You're just misstating the law. I mean, the law is clear that persons who have qualified immunity do not have to stand trial or the procedures leading up to trial. They are protected against that. They are persons in the government, running the government, and the idea is if they enjoy qualified immunity, that immunity extends to protections against discovery. I think cases like Ingle and Vatican that we've cited in our brief disprove that proposition because when there is a serious, genuine, disputed fact of prisoner of the conduct at issue in the underlying complaint, then qualified immunity does not protect from discovery. And with respect for any of the three reasons we've outlined in our brief, we request that the summary judgment be vacated and the case be remanded. Thank you. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Roger L. Gregory, Stephanie D. Thacker